THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* SANTIAGO COLÓN RODRÍGUEZ, Defendant and Appellant.

No. 14303.    Argued January 9, 1950.—Decided January 18, 1950.

*Gaspar Gerena Bras* for appellant.    *Vicente Géigel Polanco, Attorney General, J. Rivera Barreras, Fiscal of the Supreme Court,* and *Fernando Fornaris, Jr., Assistant Fiscal,* for appellee.

MR. JUSTICE MARRERO delivered the opinion of the Court.

The District Attorney filed two informations against Santiago Colón Rodríguez for a violation of § 2 of Act 417

of May 14, 1947 (Sess. Laws, p. 826) as amended by Act 114 of May 7, 1948 (Sess. Laws, p. 272).[1] The gist of the informations was that Colón Rodríguez during June, July, and August, 1948 was engaged in the employment agency business without any sort of license or authorization issued by the Commissioner of Labor of Puerto Rico. The defendant was convicted and sentenced in both cases and he has appealed from the judgments of conviction. He contends now that the lower·court erred in sentencing him without his having entered any plea of guilty, solely and exclusively resting on his admissions during the hearing on the compromise suggested *motu proprio* by the court, and in declaring valid the information against him in a prior case because it stated facts constituting a violation of said Act 417.

From the transcript of evidence it clearly appears that when the cases were called for hearing on February 14, 1949 and prior to the arraignments and before the defendant had entered any plea whatever, the attorney for the defense asked leave so that the court would hear the defendant and that the judge then stated:

". . . These cases involve a violation of Act No. 417, that is, the purchase of certain tickets, on the basis of those tickets a group of workmen was deceived. The court suggested, since it is a misdemeanor, that it may be compromised on the basis that he paid the workmen, and that gives him time to enter into a compromise with the workmen and that he receive adequate compensation."

That the defendant took the witness stand and after stating his name, he testified that he is a veteran, that he is now studying and that he receives an allowance of $120;[2] and

---

[1] Section 2 of Act 417 of 1947, as amended in 1948, insofar as pertinent reads thus:

"Every person who wishes to engage in the employment agency business, shall fill an application therefor on a form to be furnished by the Department."

[2] It does not appear from the record whether this was a monthly allowance, but we think it was.

that upon being asked by his attorney what steps he had taken in order to compromise with the workmen the cases set for that day, he stated:

"According to the directions of the Hon. Judge I sent a telegram to each one of the prejudiced parties and they came to the Hotel Central where I usually hold the meetings. Then I tried by all means to compromise before another attorney, before any attorney, all of them refusing because they wanted that whatever the decision, it came from the court. I agreed because I had nothing against it being settled in court. I made an appointment with them to be here today the fourteenth."

That upon being asked later which was the compromise accepted by the workmen and whether he could pay them according to the instalments indicated by the judge, he stated that the compromise was that half of the money would be deposited in court within three months, that the remaining half would remain at the discretion of the judge and that he would meet the instalments indicated by the judge, but praying the judge to fix them according to his income of $120; that thereupon the court asked each one of the workmen present what was the amount they had delivered to the defendant; that without having been duly sworn and without taking the witness stand, they indicated the amounts they had delivered to the defendant; that the court asked the workmen who were present whether they accepted to be paid half of the debt within three months and the remainder in instalments and that when they replied in the affirmative the judge stated:

"This is what I shall do: *To continue the hearing of the case waiving the term of prescription.*" (Italics ours.)

That the defendant then said that he waived said term and the court went on saying:

"For the day, today is the 14th, for the 16th of May. There you have three months. On May 16 you will come here with half of that money and they come and the others are summoned in order to give them that half and on that day we decide on

the instalments for the remainder. *The cases remain pending until that day and they are set for that day.* All of you come here and if you know any other prejudiced party, tell him to come." (Italics ours.)

Thus ended the so-called hearing of February 14, 1949.

It likewise appears from the transcript of evidence that on March 28 of that year the cases were again called for trial, the defendant appearing by the same attorney who had represented him in the previous hearing and without any arraignments or without any plea being entered for the defendant, who was absent, the defense expressed itself as follows:

". . . the parties appeared at the last hearing and they accepted a compromise suggested by the defendant. The court set the case for the month of May, on condition that if the defendant, on the assigned term in May, had not deposited in the office of the clerk half of the cost of the tickets of the appearing parties, the court would proceed to hold trial."

And that to this the court replied:

"That goes to the record and it is not exactly so. No compromise was reached. The court suggested *that inasmuch as the defendant had accepted the facts, that he was technically guilty,* the only thing which Your Honor discussed was the matter of a subsequent offense, the court suggested that if he was able to pay to the aggrieved workmen the amount of money which it was alleged he had misappropriated, that then the court would favorably entertain a motion to dismiss because it is a case subject to compromise. But said requisite was never complied with. *The court set this day to enter judgment. The only question for discussion is whether the judgment is for a subsequent offense."* (Italics ours.)

Thereupon the defense made it clear that at the previous hearing the court had set the cases for May in order to give the defendant an opportunity to fulfill his obligations and that subsequently and *ex parte* the court had revoked that setting by virtue of a motion filed by the district attorney, without giving the defendant a chance. The court replied

that it had made that setting because he was convinced that the defendant did not intend to fulfill his obligations; that it was a romantic gesture of the court; that the defendant has not fulfilled his obligations and the court believes that he is not going to; and that the defense ought to convince the court that it should not enter judgment against the defendant for a subsequent offense. The judge then added: "He accepted the facts contained in the information and he accepted that he had been convicted. The only thing that he did not accept was that said judgment was entered based on an insufficient information. . . . The law does not have to say in each section that a violation of said section is punishable" and convicted him of a violation of Act No. 417 and imposed a fine of $500 in each case. The defense asked that the judgment be declared null because the defendant had not entered a plea of guilty and the court expressed itself as follows:

"*He has not entered the plea*, but the court in view of the facts finds him guilty and convicted of both crimes." (Italics ours.)

It was unquestionably an error on the part of the court in so acting. It is so admitted by the *Fiscal* of this Court who acquiesces to the reversal of the judgments. If the court itself stated that the cases would be continued if the defendant waived the term of prescription; that the cases remained pending until May 16, 1949; that they were set for that day, and that the defendant had entered no plea, we can not in fact understand how it proceeded to render those judgments.

The second and third paragraphs of §2 of our Organic Act provide:

"That in all criminal prosecutions the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation, to have a copy thereof, to have a speedy and public trial, . . .

"That no person shall be held to answer for a criminal offense without due process of law; . . ." 48 U.S.C.A. § 737, p. 234.

Under the preceding precepts it is imperative to arraign a defendant, although, of course, that right may be waived. And here such waiver does not appear.

The right of the defendant to enter the proper plea,[3] whether of not guilty or guilty, as well as to have a speedy and public trial, are part of the due process of law. As we have seen, when the cases were called to be heard for the first time—without arraignments and without the defendant entering any plea at all,—only the manner in which the defendant would pay to the workmen the amounts he had received from them was discussed, the defendant being granted by the court a period in which to pay to each of them half of the debt. Nothing was said in regard to the pending informations, nor as to whether or not the defendant operated an employment agency without the necessary license or authorization therefor. Before the expiration of the term given in order to raise the necessary funds,—apparently at the request of the prosecuting attorney—the court set the cases anew and without the defendant being arraigned either at the new hearing or entering any plea thereat, the court convicted and sentenced him in both cases. This could not be done. There was, undoubtedly, a clear abuse of the due process of law. See Orfield, Criminal Procedure from Arrest to Appeal, 1947, p. 291; 21 Harvard Law Review, p. 217; 14 Am. Jur. § 257, p. 943. Cf. *State* v. *Walton*, 91 Pac. 490.

The fact that the defendant was inclined to compromise with the workmen, did not have the scope ascribed to it by

---

[3] Section 162 of the Code of Criminal Procedure provides:

"There are four kinds of pleas to an information. A plea of—

"1. Guilty;

"2. Not guilty;

"3. A former judgment of conviction or acquittal of the offense charged, which may be pleaded either with or without the plea of not guilty;

"4. Once in jeopardy."

the court. Colón Rodríguez was charged with engaging in the employment agency business without having a license issued by the Commissioner of Labor of Puerto Rico. On this particular aspect not a word was said during the hearings before the lower court, so that even if the compromise agreed to by him were admissible in evidence, which question is not before us and which we do not have to decide, it is perfectly clear that insofar as the informations were concerned, they were not read to him nor did he enter any plea in regard thereto. Since this error was committed, the judgment should be reversed.

■■ Although in view of the conclusion we have reached it would be unnecessary to discuss the other error assigned with respect to whether or not the previous information in case No. M–2007 was valid and consequently whether it may serve as a basis to an allegation and conviction for a subsequent offense, for a better orientation we deem it convenient to state that § 2 of Act 417 prior to its amendment in 1948 provided that "Every person who wishes to engage in the employment agency business, shall fill an application therefor on a form to be furnished by the Department" and that although that Section itself did not express that its violation would constitute a crime, however, § 11 of that same Act provided that "Any person who violates this Act, or any section or provision hereof, . . . shall be guilty of a misdemeanor . . ." That was enough for the information in said case to charge a public offense and, upon the defendant being convicted, said judgment to serve as a basis for an allegation of a subsequent offense. An Act does not have to express in each one of its Sections that a violation thereof will be a public offense. It is enough that such statement appear in any of its Sections. *People* v. *Avilés*, 54 P.R.R. 257, 264.

The judgments appealed from will be reversed and the cases remanded to the lower court for arraignments and the corresponding trials.